JOSEPH MARTINEZ,     )
           )
    Petitioner,   )  No. 14 C 9845
           )
   v.       )
           )  Judge Edmond E. Chang
GUY PIERCE, as Warden of Pontiac )
Correctional Center,[1]    )
           )
    Respondent.  )

## MEMORANDUM OPINION AND ORDER

Joseph Martinez filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254,[2] challenging his 2006 conviction for first-degree murder and the resulting 75-year sentence. Martinez asserts five claims in support of his petition: (1) the evidence was insufficient to support his conviction; (2) prosecutorial misconduct throughout the trial violated his right to due process of law; (3) the trial court violated his right to an impartial judge and due process of law; (4) his extended term sentence violated his right to be free from cruel and unusual punishment; and (5) the prosecution's use of his coerced custodial statements during trial violated his right against self-incrimination and due process of law. R. 37 at

---

[1] The original respondent in this case was Tarry Williams. But because Guy Pierce is the warden of Pontiac Correctional Center (where Martinez is currently imprisoned, *see* R. 39, State's Resp. to Mot. to Amend Instanter at 1 n.1), Pierce is the proper party respondent. *See* Rule 2(a), Rules Governing § 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). The Clerk's Office is directed to substitute Guy Pierce as the respondent.

[2] This Court has subject matter jurisdiction over the case under 28 U.S.C. § 2241. Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

Exh. 1, Am. Habeas Pet.[3] For the reasons that follow, Martinez's petition is denied and no certificate of appealability will issue.

## I. Background

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Martinez has not provided clear and convincing evidence to rebut the presumption of correctness here, so this factual background is taken from the state courts' findings.

## A. The Crime

In February 2002, Martinez began dating Valerie Padin.[4] R. 25-1, Exh. A, Order on Direct Appeal at 1-2, *People v. Martinez*, No. 1-07-0059 (Ill. App. Ct. Dec. 23, 2009). Padin had a young son named Michael. *Id.* Shortly after the two started dating, Padin obtained a protection order against Martinez. *Id.* Padin, however, modified the protection order in November 2002 and eventually reunited with Martinez after the birth of their first child together in February 2003. *Id.* at 2.

---

[3]Martinez moved to amend his petition in February 2016—14 months after he filed his original petition. *See* R. 1, Habeas Pet.; R. 37, Mot. to Amend Instanter. The Court addresses Martinez's request for leave to file an amended petition below. *See infra* Section III.A. at 12-14.

[4]The facts detailing Martinez's crime are largely taken from Padin's and Detective John Murray's trial testimony, which the Illinois Appellate Court relied on in its order affirming Martinez's conviction and sentence. *See* R. 25-1, Exh. A, Order on Direct Appeal at 1-3, *People v. Martinez*, No. 1-07-0059 (Ill. App. Ct. Dec. 23, 2009).

In November 2003, Padin told Martinez that she planned to leave him and put their unborn child (she was around five or six months pregnant with their second child at the time) up for adoption. Exh. A, Order on Direct Appeal at 2. According to Padin, Martinez blamed Michael for her decision to give up the unborn child. *Id.* at 2-3.

On November 7, 2003, Martinez returned home in the middle of the day after attending an anger management class. Exh. A, Order on Direct Appeal at 3. (Martinez had previously been found guilty of domestic battery and sentenced to a year of probation, plus anger management classes. *Id.*) After Padin informed Martinez that Michael had been misbehaving, Martinez spanked the boy with a belt and sent him to his room. *Id.* That afternoon, while Padin was at a Walgreen's store, Michael came running out of his room. *Id.* at 4. Martinez grabbed Michael and pressed him against the wall in a "bear hug." *Id.* (At least one doctor had told Padin and Martinez that they could give Michael a bear hug when he acted out to calm him down. *Id.* at 2.) After holding him in that position for a while, Martinez slid Michael down the wall, stood him back up, and took him to his room for a nap. *Id.* at 4. When Padin returned, Martinez told her that Michael was asleep. *Id.* Padin then went to the store, and after returning home again, asked Martinez to wake Michael. *Id.* at 5. Martinez responded that they should wait until after dinner to wake him. *Id.* After dinner, Martinez eventually went to wake Michael, but he was cold to the touch and not breathing. *Id.* Padin attempted CPR, but Michael was already dead. *Id.*

On December 5, 2003, Martinez was indicted for first-degree murder and aggravated battery of a child. R. 25-19, Exh. S, Trial Common Law Record at C6-16, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.). The indictment alleged that Martinez knowingly inflicted blunt trauma injuries that killed Michael. *Id.* Padin was also charged, and later convicted, of child endangerment, and sentenced to four years of imprisonment. Exh. A, Order on Direct Appeal at 5.

## B. The Trial

The jury convicted Martinez of first-degree murder after hearing testimony from a number of witnesses, including Padin, the detective who interviewed Martinez the night of Michael's death, a medical examiner, and forensic pathologists. Exh. A, Order on Direct Appeal at 1-7.

Dr. Nancy Jones, a medical examiner and forensic pathologist, performed the autopsy on Michael's body. *Id.* at 6. She testified that Michael's death resulted from multiple injuries. *Id.* She further testified that she had found 43 distinct areas of blunt trauma injuries on Michael's body, including to his head, neck, and nearly every vital organ. *Id.* These injuries—particularly those to Michael's head and intestines, the deep liver laceration, and Michael's kidney and adrenal injuries— were inconsistent with merely giving Michael a forceful bear hug. *Id.* And while a normal, healthy adult could have caused these injuries, Dr. Jones testified that it would be difficult for a pregnant woman to have caused them. *Id.* Dr. Jones concluded that Michael had died of multiple blunt trauma injuries as a result of child abuse and that his death was a homicide. *Id.*

In contrast, the defense's forensic pathologist, Dr. Werner Spitz, testified that a pregnant woman could have caused Michael's injuries. Exh. A, Order on Direct Appeal at 6. He also testified that a man of Martinez's size would have fractured Michael's bones in addition to the injuries the boy suffered. *Id.* But Dr. Spitz never examined Michael's body. *Id.*

Robert Sisson, a paramedic, testified that Padin told him that she last saw Michael at 2 p.m. Exh. A, Order on Direct Appeal at 7. He also testified that Padin had stated that she later checked on Michael and noticed that he had wet the bed, but that she did not want to wake him. *Id.*

The jury deliberated over a period of two days. Exh. A, Order on Direct Appeal at 7. On the second day, after having deliberated for over eight hours, the jury sent the trial judge a note stating, "We feel we are at an impasse on the verdict. We are unanimous on guilt, however, divided on which charge. We ask for your instruction/guidance." *Id.* The judge then issued a *Prim* instruction—that is, a deadlock instruction—to the jury. *Id.* Soon thereafter, the jury found Martinez guilty of first-degree murder. *Id.* The jury also found that Michael was under 12 years old when he died, that his death resulted from exceptionally brutal and heinous behavior, that Michael was the subject of a protective order, and that the murder was committed by a person (Martinez) against whom the protection order was issued. *Id.* The trial court then sentenced Martinez to an extended term of 75 years in prison. *Id.*

## C. Post-Trial Procedure

On direct appeal to the Illinois Appellate Court, Martinez raised five claims: (1) the evidence was insufficient to prove him guilty at all; (2) the evidence was insufficient to prove specifically that he had the requisite mental state for first-degree murder; (3) the prosecutor committed misconduct by (a) referring to Martinez as a "beast," (b) making improper testimonial objections, (c) misstating the law of involuntary manslaughter, and (d) making improper comments about defense counsel; (4) the trial court erred because the trial judge (a) refused to recuse himself, (b) failed to define "great bodily harm" for the jury, (c) prematurely gave a deadlock instruction to the jury, and (d) gave the jury transcripts of some, but not all, witnesses; and (5) the extended term sentence of 75 years imprisonment was excessive. *See* R. 25-2, Exh. B, Appellant's Opening Br. on Direct Appeal, *People v. Martinez*, No. 1-07-0059 (Ill. App. Ct. Feb. 9, 2009). In a written opinion, the Illinois Appellate Court affirmed the conviction and sentence. Exh. A, Order on Direct Appeal. Martinez filed a petition for leave to appeal, which the Illinois Supreme Court denied. *See* R. 25-5, Exh. E, Pet. for Leave to Appeal, *People v. Martinez*, No. 109809 (Ill. Jan. 25, 2010); R. 25-6, Exh. F, Order Denying Pet. for Leave to Appeal, *People v. Martinez*, No. 109809 (Ill. Mar. 24, 2010).

Martinez filed his first petition for state postconviction relief on June 4, 2010. R. 25-35, Exh. II, Postconviction Common Law Record at C10-16, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.). In his petition for postconviction relief, Martinez asserted that the trial court violated his right to a fair trial and due

process of law when it improperly transferred his case to another judge.[5] *Id.* at C11-16. After the court dismissed the postconviction petition, Martinez moved to reconsider. *Id.* at C58-61.

While that motion was pending, Martinez filed a motion for leave to file a successive postconviction petition in April 2011. R. 25-40, Exh. NN, Successive Postconviction Common Law Record at C26-39, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.). This time Martinez asserted two claims: (1) that his custodial statements were coerced because the police held him for more than 48 hours without a probable cause hearing; and (2) that he was denied effective assistance of appellate counsel. *Id.* The court ultimately denied Martinez's request for leave to file the successive postconviction petition, *id.* at C156-159, and his motion to reconsider his first postconviction petition, R. 25-43, Exh. QQ, Mot. to Reconsider Report of Proceedings at A-2, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.).

Martinez appealed both judgments. In his consolidated appeal, he argued (1) that the trial court erred by refusing to recharacterize his motion for leave to file a successive postconviction petition as an amendment to his initial postconviction petition; and (2) that his custodial statements were coerced. R. 25-13, Exh. M,

---

[5]Martinez also filed a petition for relief from judgment in April 2010, raising the same argument that he had in his first petition for state postconviction relief, namely that the trial court had improperly transferred his case to another judge. *See* R. 25-37, Exh. KK, Section 2-1401 Common Law Record Vol. 2 at 4-12, No. 03-CR-26668 (Cir. Ct. Cook Cnty.). After a few rounds of appeals, the circuit court ultimately dismissed Martinez's petition for relief from judgment and the Illinois Appellate Court affirmed. *See* R. 25-47, Exh. UU, Section 2-1401 Report of Proceedings on Remand at C2, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.); R. 25-12, Exh. L, Order, *People v. Martinez*, No. 1-12-2102 (Ill. App. Ct. June 28, 2013).

Pet'r's Opening Br. at 19-30, *People v. Martinez*, Nos. 1-11-1911, 1-12-3131 (Ill. App. Ct. Apr. 2, 2013). The Illinois Appellate Court affirmed both judgments, holding that Martinez failed to satisfy the requisite cause-and-prejudice test for filing a successive postconviction petition. R. 25-16, Exh. P, Order, *People v. Martinez*, Nos. 1-11-1911, 1-12-3131 (Ill. App. Ct. Mar. 28, 2014), 2014 WL 1281696. Martinez then raised these same two claims in a petition for leave to appeal, which the Illinois Supreme Court denied. R. 25-17, Exh. Q, Postconviction Pet. for Leave to Appeal at 5-19, *People v. Martinez*, No. 117648 (Ill. Apr. 18, 2014); R. 25-18, Exh. R, Order Denying Postconviction Pet. for Leave to Appeal, *People v. Martinez*, No. 117648 (Ill. Sept. 24, 2014).

In December 2014, Martinez filed a federal habeas petition in this Court, initially asserting ten claims. Habeas Pet. at 6-31. The State asked this Court to deny Martinez's petition and to deny a certificate of appealability. R. 25, State's Answer. Fourteen months after filing his initial federal habeas petition, Martinez filed a motion to amend in order to correct several deficiencies in the petition and to withdraw several claims. R. 37, Mot. to Amend Instanter. Martinez asserts five claims in his amended petition: (1) the evidence was insufficient to prove him guilty and to prove that he had the requisite mental state for first-degree murder; (2) he was denied his right to a fair trial and due process of law as a result of prosecutorial misconduct, specifically because the prosecution (a) referred to Martinez as a "beast," (b) made improper testimonial objections, (c) misstated the law of involuntary manslaughter, and (d) made improper comments about defense counsel;

(3) he was denied his right to due process of law because the trial judge (a) refused to recuse himself, (b) prematurely gave a deadlock instruction to the jury, and (c) gave the jury transcripts of some, but not all, witnesses; (4) he was denied his right to be free from cruel and unusual punishment where the trial judge sentenced him to an extended term sentence of 75 years; and (5) he was denied his right against self-incrimination and due process of law where the court admitted his allegedly coerced custodial statements as evidence at trial. R. 37 at Exh. 1, Am. Habeas Pet. at 5-21. The state then filed a response, asserting that the Court should deny Martinez's motion to amend on the grounds that the claims proposed in the amended federal habeas petition are meritless. R. 39, State's Resp. to Mot. to Amend Instanter.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks and citation omitted). A habeas petitioner must fully and fairly present his federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner has failed to properly assert his federal claims at each level of state review, his claims are

procedurally defaulted. *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). A claim is also procedurally defaulted when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, making the state court's refusal to adjudicate the claim an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). Either way, procedural default precludes federal-court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). A habeas petitioner may overcome procedural default, however, either by demonstrating cause for the default and actual prejudice from the default, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances.

If the petitioner successfully runs the procedural-default gauntlet for a particular claim, then a federal court can at least consider the merits of that federal habeas claim. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that

reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Alternatively, under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 413. But even if a federal court independently concludes that the relevant state-court decision erroneously applied clearly established federal law, still the writ does not necessarily issue; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

## III. Analysis

### A. Motion to Amend Habeas Petition

Before considering the substance of Martinez's federal habeas claims, the Court must first decide whether to allow Martinez to file the amended habeas petition to "correct and/or cure various pleading and procedural deficiencies." Mot. to Amend Instanter at 2. For example, many of the claims that Martinez raised in his original petition did not allege any sort of constitutional violation; instead, these claims concerned state-law violations. *See* Habeas Pet. Martinez attempts to correct this pleading deficiency in his amended petition by re-couching his claims in order

to establish that he is in custody in violation of the federal Constitution, rather than referring to Illinois state law. *See* R. 37 at Exh. 1, Am. Habeas Pet. at 5-21. The State contends that allowing Martinez to file an amended petition is futile. State's Resp. to Mot. to Amend Instanter at 2. Specifically, the State asserts that "[w]hile [Martinez] has arguably addressed [the state's] contention that several of his claims were non-cognizable, nothing in petitioner's amendment could remedy the fact that his claims are either meritless as a matter of law, or procedurally barred." *Id.*

Under 28 U.S.C. § 2242, a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; *see also* Rule 11, Rules Governing § 2254 Cases. So, Rule 15 of the Federal Rules of Civil Procedure governs whether Martinez may amend his habeas petition. *See* Fed. R. Civ. P. 15. Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Courts routinely grant leave to amend a habeas petition where the initial petition failed to allege particular violations of federal law. *See, e.g.*, *Thomas v. California Bd. of Parole Hr'gs*, 2009 WL 585830, at *2 (N.D. Cal. Mar. 4, 2009) (allowing amendment "so that Thomas may attempt to assert a federal basis for his claim" and warning that "[i]n his amended petition, Thomas must identify the particular federal constitutional provision he claims was violated by the decision not to release him from parole."); *Dema v. Goddard*, 2008 WL 2397506, at *1 (D. Ariz. June 11, 2008) (granting leave to amend "[i]n the interest of justice" where the

original petition "failed to make any reference to the United States Constitution or to any laws or treaties of the United States."); *Olagues v. Foti*, 2007 WL 4209433, at *1 (N.D. Cal. Nov. 27, 2007) (holding that "because only federal claims that have been previously exhausted in the state courts may be considered, Petitioner will be provided with an opportunity to file an amended petition, identifying which of his claims allege the violation of his federal constitutional rights."); *cf. Sterling v. Bartlett*, 214 F.R.D. 101, 105 (W.D.N.Y. 2003) (granting petitioner's motion to amend after observing that "[t]he proposed amended petition does not change the gist of Sterling's hypnosis claims, but rather re-casts them as a federal constitutional violation."). This is exactly the case here: In his initial petition, Martinez failed to assert that the state trial and sentencing proceedings violated any one of his federal constitutional rights. Martinez now attempts to correct this error by re-casting his claims as federal constitutional violations. The substance of Martinez's allegations has not changed. *Cf. United States ex rel. White v. DeRobertis*, 566 F. Supp. 871, 873-74 (N.D. Ill 1983) (reasoning that "by virtue of the substance of the allegations presented by the petitioner, the requirement that a constitutional violation be incorporated within the petition is easily satisfied."). What's more, allowing Martinez to amend his petition would not prejudice the State—the original petition adequately notified the State of the facts that supported Martinez's claims for federal habeas relief. Based on the above, Martinez's motion is granted.[6] The Court will consider Martinez's claims as alleged in his amended habeas petition in rendering the decision set forth below.[7]

---

[6]Martinez's amended petition is also timely under 28 U.S.C. § 2244. An amended

## B. Claim 1 (Original Petition Claims 1 & 2): Insufficient Evidence

In his first claim, Martinez asserts that the evidence is insufficient to support his conviction.[8] R. 37 at Exh. 1, Am. Habeas Pet. at 5-8. Specifically, Martinez contends that the State failed to meet its burden for two reasons: "First, the State failed to present sufficient evidence that he had the requisite mental state for committing first degree murder. Second, other evidence and testimony presented at trial demonstrates Ms. Padin could have inflicted the victim[']s injuries leading to death." *Id.* at 5-6.

---

habeas petition relates back to the date of the original petition if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original [petition] … ." Fed. R. Civ. P. 15(c)(1)(B); *see also Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (explaining that in habeas proceedings the "original pleading" is the initial habeas petition filed by the petitioner). This is important because under 28 U.S.C. § 2244, there is a 1-year limitation period for filing a habeas petition. *See* 28 U.S.C. § 2244(d)(1).

The State does not dispute that Martinez's original habeas petition was timely under 28 U.S.C. § 2244(d)(1), so the only issue is whether Martinez's amended petition properly relates back to his original one. *See* State's Answer at 12 ("On December 5, 2014, this Court received petitioner's timely pro se 28 U.S.C. § 2254 petition for a writ of habeas corpus."). Here, there is no question that the claims in Martinez's amended petition arise out of the same "conduct, transaction, or occurrence set out … in the original [petition] … ." Fed. R. Civ. P. 15(c)(1)(B). To be sure, the amended petition, unlike the original one, identifies the constitutional claims at issue, but the facts giving rise to those claims remain the same. *See Mayle*, 545 U.S. at 650 ("An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by *facts that differ in both time and type* from those the original pleading set forth."(emphasis added)). So, Martinez's amended petition is timely as it "relates back" to the date of his original petition under Rule 15(c)(1)(B).

[7]In its response to Martinez's motion to amend, the State requested an opportunity to respond to Martinez's amended petition: "If this Court holds that any of the claims that respondent has not addressed on the merits are not procedurally defaulted, then respondent requests thirty days from such an order in which to address the claims on the merits." State's Resp. to Mot. to Amend Instanter at 2. The Court's analysis below, *see infra* Section III.B.-E., renders any further response to Martinez's habeas petition unnecessary.

[8]Martinez raised this claim on direct review to the Illinois Appellate Court and in his petition for leave to appeal to the Illinois Supreme Court. Exh. A, Order on Direct Appeal at 7-11; Exh. E, Pet. for Leave to Appeal at 2, 12-16. Martinez's insufficient evidence claim, therefore, is properly before this Court on federal habeas review.

As noted earlier, the writ cannot issue on this ground unless the Illinois Appellate Court decision was contrary to, or involved an unreasonable application of, Supreme Court law. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412. Under *Jackson v. Virginia*, a court reviewing a sufficiency of the evidence claim must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). Though the state appellate court did not cite *Jackson* specifically, this is the precise rule that it applied. *See* Exh. A, Order on Direct Appeal at 8 ("'In reviewing the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *People v. Jordan*, 843 N.E.2d 870, 879 (Ill. 2006))). Because the state appellate court analyzed Martinez's insufficient evidence claim under the correct legal rule, its decision was not contrary to clearly established Supreme Court law.

Nor did the Illinois Appellate Court apply *Jackson* unreasonably. It was perfectly reasonable for that court to conclude that any rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found the essential elements of first-degree murder beyond a reasonable doubt. *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003). In making that determination, the appellate court considered the following evidence:

> In this case, we have defendant's statement regarding the bear hug and pressing Michael into a wall, resulting in problems breathing and standing.

There was conflicting expert testimony about whether Valerie could have inflicted the injuries to Michael, and testimony that she had the opportunity to inflict them while Martinez was out at Walgreen's. However, the jury was free to weigh the expert testimony in favor of Martinez's guilt, and there was no evidence that Valerie inflicted any injuries of the sort ultimately recounted in Michael's autopsy. Although Martinez claims there was little evidence that Martinez had been violent towards Michael in the past, except for spanking him with a belt, there was evidence that Michael had been beaten with a cable, and that Martinez was working with a cable that afternoon. The jury heard evidence of Martinez's past violence towards Valerie. The jury also heard evidence that Martinez blamed Valerie's decision to put their unborn child up for adoption on Michael. The jury further heard evidence that Martinez discouraged Valerie from trying to wake Michael during the afternoon of his death.

Exh. A, Order on Direct Appeal at 9-10. The appellate court considered even more evidence when analyzing whether a rational trier of fact could have found that Martinez possessed the requisite mental state for murder, including: the height and weight disparities between Martinez and Michael; the severity of Michael's injuries; and the fact that Martinez blamed Michael for Padin's decision to put his unborn child up for adoption. *Id.* at 10-11. From all of this evidence, the state appellate court reasonably concluded that Martinez killed Michael with the intent to kill or do great bodily harm to Michael. *See* 720 ILCS 5/9–1(a) (identifying the elements of first-degree murder under Illinois state law). Martinez, therefore, is not entitled to habeas relief based on his claim that the evidence was insufficient to support his conviction.

## C. Claim 2 (Original Petition Claim 3):
## Right to Due Process—Prosecutorial Misconduct

Broadly speaking, Martinez's second claim is that prosecutorial misconduct throughout the trial violated his right to due process.[9] R. 37 at Exh. 1, Am. Habeas Pet. at 8-13. The crux of Martinez's second claim concerns statements made by the prosecution during its closing argument. Martinez asserts that his due process rights were violated when the state, during closing arguments, referred to Martinez as a "beast," misstated the law of involuntary manslaughter, and made improper comments about defense counsel. *Id.* Martinez also asserts that the prosecution's improper testimonial objections throughout the trial amounted to a due process violation. *Id.*

In *Darden v. Wainwright*, the Supreme Court established a framework to evaluate "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. 168, 181 (1986) (internal quotations omitted). First, the court determines whether the challenged comments were improper; if so, then the court asks whether the comments prejudiced the defendant. *Bartlett v. Battaglia*, 453 F.3d 796, 800 (7th Cir. 2006); *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001). *Darden* identified six factors a court should consider when determining whether the prosecutors' comments were prejudicial: "(1) whether the prosecutor misstated the evidence, (2) whether the

---

[9]As with Martinez's first claim, Martinez raised this claim on direct review to the Illinois Appellate Court and in his petition for leave to appeal to the Illinois Supreme Court. Exh. A, Order on Direct Appeal at 11-21; Exh. E, Pet. for Leave to Appeal at 2, 16-20. Martinez's second claim, therefore, is properly before this Court on federal habeas review.

remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000); *see Darden*, 477 U.S. at 181-82. "These factors … are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line." *Hough v. Anderson*, 272 F.3d 878, 903 (7th Cir. 2001).

The Illinois Appellate Court's legal analysis is consistent with *Darden*. For example, when scrutinizing the State's reference to Martinez as a "beast" during closing arguments, the appellate court explicitly stated that "*improper* remarks generally do constitute reversible error unless they result in *substantial prejudice* to the accused … ." Exh. A, Order on Direct Appeal at 13 (emphases added); *see also, e.g., id.* at 15 ("In sum, over the course of the trial, the State made improper comments about defense counsel, but the trial court sustained the objections to them, curing any improper inferences."); *id.* at 21 ("A prosecutor's closing argument will lead to reversal only if it created 'substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them.'" (quoting *People v. Wheeler*, 871 N.E.2d 728, 745 (Ill. 2007))). The appellate court also considered and applied the factors identified in *Darden* to determine whether the prosecutors' comments were prejudicial. *See, e.g.*, Exh. A, Order on Direct Appeal at 13 (determining that the State's reference to Martinez as a "beast" did not amount to reversible error after considering the trial court's instructions

and the weight of evidence against Martinez). The state appellate court's decision was not contrary to clearly established Supreme Court case law.

The question then becomes whether the Illinois Appellate Court unreasonably applied *Darden*. Taking each one of Martinez's prosecutorial misconduct arguments in turn, the Court concludes that the appellate court's application of *Darden* was reasonable.

### 1. Referring to Martinez as a "Beast"

The appellate court held that Martinez's right to a fair trial was not violated when the prosecutor called him a "beast" during closing arguments. While acknowledging that "[t]hese comments were improper, as they merely served to inflame the jury," the appellate court also noted that "[t]he trial court overruled the defense objections to the references." Exh. A, Order on Direct Appeal at 13. But the appellate court ultimately found it persuasive that the trial court "instructed the jury to disregard statements made in closing argument which were not based on the evidence." *Id.* And, after "review[ing] … the record as a whole, including Martinez's statements to the police and the evidence of the extensive fatal injuries to Michael," the appellate court concluded that the comments were "not a material factor in Martinez's conviction, and thus not reversible error." *Id.* at 13-14.

Although the Illinois Appellate Court did not apply *Darden* with precision, it did analyze whether the comments were improper and evaluated the impact the comments had on Martinez's conviction. What's more, the court's analysis particularly focused on the weight of the evidence against Martinez, which the

Seventh Circuit has characterized as "the most important consideration" under *Darden. United States v. Morgan*, 113 F.3d 85, 90 (7th Cir. 1997); *Gramley*, 225 F.3d at 793. Accordingly, this Court cannot say that the Illinois Appellate Court unreasonably applied *Darden* in holding that the prosecutor's repeated references to Martinez as a "beast" did not rise to the level of a constitutional violation. Martinez, therefore, is not entitled to habeas relief on this ground.

## 2. Improper Testimonial Objections

The appellate court reviewed eight alleged "testimonial objections" (also known as "speaking" objections, that is, when the objecting lawyer goes beyond just a concise statement of the objection) made by the prosecution, which Martinez asserts violated his due process right to a fair trial. Here are the first four:

1. [DEFENSE COUNSEL]: Would the swelling as you say it, doctor, without if[s] and hypotheticals of increasing the swelling, did the head injuries, were those the fatal blow to this child?

   [THE STATE]: Objection, judge. The doctor has to answer the best she can. With no medical treatment it would have.

2. [DEFENSE COUNSEL]: So it's your opinion that Valerie Padin had the sufficient physical strength to inflict these injuries to this child, correct?

   [THE STATE]: Objection. I don't believe Dr. Jones has ever met Valerie Padin.

   THE COURT: Objection sustained.

3. [DEFENSE COUNSEL]: And then Mr. Martinez talked to Michael again?

   [THE STATE]: Objection, judge. That's not what the report says at that point in time. Misreading the reports.

   THE COURT: The objection will be sustained if it is not in the report.

> [DEFENSE COUNSEL]: Judge it is in the report.

4. [DEFENSE COUNSEL]: … [I]s that scab consistent with a healing injury being caused on November 7, 2003?

   [THE STATE]: Objection, judge. Dr. Jones said it was a healing injury.

Exh. A, Order on Direct Appeal at 16-17. The appellate court concluded that these first four testimonial objections were not even improper. *Id.* This is because in these instances "the State was not editorializing, but offering a reason to object to … the [defense's] question." *Id.* at 16; *see also id.* at 17 (analyzing the third testimonial objection and concluding that "the State was explaining the basis for an objection to the attempted impeachment of Valerie."). This is the fifth objection:

5. [DEFENSE COUNSEL]: Do you agree with Nancy Jones's opinion that a pregnant woman's tummy would get in the way of causing some of these injuries? Do you agree with her opinion —

   [THE STATE]: Objection, Your Honor. The opinion of Dr. Jones considered the totality of the injuries that the doctor has testified to.

*Id.* at 17-18. The appellate court acknowledged that the trial court overruled the fifth "testimonial objection" identified by Martinez. *Id.* at 18. Here are the remaining objections:

6. [DEFENSE COUNSEL]: Nancy Jones told you what she received, a body, a blanket, a blanket appeared to have blood stains. And there's the blanket.

   [THE STATE]: Objection, Judge. The detective testified that there was a blanket in the closet.

7. [DEFENSE COUNSEL]: Detective Murray told you it was a very bad idea and a lot of officers in a crime scene, but he allowed it to happen anyway.

   [THE STATE]: Objection, Judge. He never said there was [sic] too many officers at the crime scene.

8. [DEFENSE COUNSEL]: You know that's not true. The paramedic told you that she checked in on the child at 2:00.

[THE STATE]: Objection; that's not what the paramedic said. The last time she saw the child was 2:00.

*Id.* at 18. These final three testimonial objections occurred during defense counsel's closing argument. As for these three objections, the appellate court observed that the trial court sustained one of the objections and that the trial court and defense counsel were able to take corrective action in response to the other two. *Id.* at 18-19. After considering all of the testimonial objections identified by Martinez, the appellate court held that "the record does not show that the State crossed into pervasive, improper behavior … . Moreover, the record shows that the trial court took corrective action on the occasions where the State's objections could have been construed as overly argumentative." *Id.* at 19.

The state court's rejection of Martinez's "testimonial objection" argument was not an unreasonable application of *Darden*. In analyzing the objections, the appellate court properly evaluated, among other considerations, whether the objections were improper, and if so, whether the prosecutors misstated the evidence, whether the defense invited the response, whether the trial court gave corrective instructions, and whether Martinez's counsel had an opportunity to rebut the objections. *See* Exh. A, Order on Direct Appeal at 16-19; *see also Darden*, 477 U.S. at 181-82. What's more, the appellate court also repeatedly scrutinized another *Darden* factor throughout its opinion—the strong evidence against Martinez. *See, e.g.*, Exh. A, Order on Direct Appeal at 9-10; *id.* at 10-11. After reviewing the trial

court record, this Court agrees with the appellate court: indeed, the objections were relatively concise statements of the basis for the objection, and likely not even improper. And, as the appellate court reasonably held, even if some of the objections were improper commentary, they did not rise to the level of a due-process violation.

### 3. Misstating the Law of Involuntary Manslaughter

During closing arguments, the State argued that the jury should convict Martinez of first-degree murder rather than involuntary manslaughter. The prosecutor characterized the law of involuntary manslaughter as follows:

> Now you're going to get an instruction on what's called involuntary manslaughter. … [W]hen you're reading this just remember this instruction does not cover anywhere near enough for what [Martinez] did. This instruction acknowledges you have to find that [Martinez] did it first of all, but in order for him to get just involuntary manslaughter you would have to find that when he was punching Michael repeatedly and either hitting him over the head with something or just banging his head into something as Dr. Jones said he had to have done, that he was only acting recklessly.

> And I don't want you to be confused when you read this because involuntary manslaughter does not mean that you don't think he intended to kill him, it's completely different. If you think that he performed the acts intentionally, intentionally pulling his hand back and punching Michael each time, intentionally taking his head and banging it up against the wall, if you think he performed those acts intentionally, then he is not just guilty of involuntary manslaughter. *Involuntary manslaughter applies when you are cleaning out a gun and the gun accidentally goes off and you shoot somebody. We say, you know what? You were reckless in doing that because somebody else was standing around. That's involuntary manslaughter.*

> [Defense objection overruled.]

> If you find that he didn't really mean to kill Michael but that his actions were intentional in inflicting those injuries it's first degree murder as long as he knows that those acts create a strong probability of at the very least great bodily harm. So just to summarize it all, if you believe he intended to … hurt him when he was hurting him and knew these acts create at least great bodily harm, he is guilty of murder and not involuntary manslaughter.

R. 25-28, Exh. BB, Trial Report of Proceedings Vol. 9 at PP160-162, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.) (emphasis added); *see also* Exh. A, Order on Direct Appeal at 19-20. Martinez asserts that the prosecutor misstated the law in describing involuntary manslaughter in this way, and as a result, violated his due process rights. R. 37 at Exh. 1, Am. Habeas Pet. at 8, 11-12.

After reviewing the prosecution's statements and the trial record, the appellate court held—and this Court agrees—that "the State's passing use of a non-analogous example in closing argument did not result in substantial prejudice to Martinez warranting a new trial." Exh. A, Order on Direct Appeal at 21. Though the appellate court recognized that the prosecution's discussion on involuntary manslaughter was improper (because the prosecutor equated criminal recklessness to an accident), the court determined that the various corrective measures taken by the trial court and the prosecution negated any potential prejudice: Not only did the trial court "properly instruct[] [the jury] on the law, and … instructed that closing argument is not evidence," but "[t]he State's improper example of involuntary manslaughter was immediately followed by a correct statement of the law distinguishing murder from involuntary manslaughter." *Id.* In addition to these corrective measures, the appellate court also considered "the balance of the evidence and the theories of the case presented to the jury"[10] before holding that Martinez's conviction did not require reversal. *Id.*

---

[10]The defense's primary theory was not that Martinez had acted recklessly, but rather that Padin had committed the murder. *Id.*

To be sure, "a jury is likely to repose greater trust in [a prosecutor's] arguments," and "[a] prosecutor must not abuse that trust by misleading the jury about the law … ." *Hennon v. Cooper*, 109 F.3d 330, 333 (7th Cir. 1997). But the circumstances surrounding the prosecution's misstatement of the law in this case refute any argument that a constitutional violation occurred. *See, e.g.*, *Hough*, 272 F.3d at 904 (holding that the prosecution's comments did not amount to a constitutional violation where "the jury was on notice that the arguments were nothing more than counsel's interpretation of the evidence," "defense counsel … ha[d] an opportunity to rebut at least some of the prosecutor's questionable statements," and "the jury was presented with overwhelming evidence of three aggravating factors compared to sparse evidence in mitigation."); *Hennon*, 109 F.3d at 333 (reasoning that "[g]iven the strength of the evidence against Hennon, [a due process violation] was most unlikely, especially since the judge sustained many objections to the prosecutor's closing argument and repeatedly reminded the jury that they must decide the case in accordance with the instructions that he, the judge, would be giving it."). Considering the steps taken to correct the prosecution's misstatement of the law on involuntary manslaughter—including accurate jury instructions and a general admonition that lawyer's statements are not evidence—combined with the substantial evidence of guilt, the appellate court's decision was reasonable. Just as Martinez's other prosecutorial misconduct arguments have failed so far, this one fails too.

## 4. Improper Comments About Defense Counsel

In his amended petition, Martinez broadly alleges that the prosecution's improper remarks directed at his attorney violated his due process rights. R. 37 at Exh. 1, Am. Habeas Pet. at 8, 12-13. This argument is not sufficiently specific. "A habeas petitioner must state specific facts fleshing out each ground for relief so that the District Court may tell from the face of the petition whether further habeas review is warranted." *United States ex rel. Santiago v. Welborn*, 2002 WL 31600051, at *12 (N.D. Ill. Nov. 18, 2002), *aff'd sub nom.*, 93 F. App'x 74 (7th Cir. 2004). In other words, "mere vague assertions and conclusions of a constitutional violation" are not enough. *Id.* In *United States ex rel. Santiago v. Welborn*, for example, the district court dismissed a due process claim based on a prosecutor's improper comments after observing that the petitioner failed to "indicate which specific remarks at trial amounted to a due process violation … ." *Id.* at *13; *see also United States ex rel. Johnson v. Sternes*, 2004 WL 1427113, at *8 (N.D. Ill. June 23, 2004) (holding that the petitioner failed to properly allege a constitutional violation given that "[n]either the Court nor the State was directed to where the prosecutor argued facts not in evidence or what remarks were designed to inflame the jury."). Here too, Martinez fails to provide a single example of an improper comment that violated his due process rights. Rather, Martinez vaguely asserts in his amended petition that "[t]he prosecution improperly commented about defense counsel's assessment of the facts and evidence at trial," and "made improper comments about defense counsel

that aimed to bolster the credibility of state witnesses." R. 37 at Exh. 1, Am. Habeas Pet. at 12.

That Martinez identified which specific "improper comments" the prosecution made at trial in his *original* habeas petition, *see* Habeas Pet. at 11-12, does not matter. An amended habeas petition supersedes an original habeas petition. *See Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002); *Ellison v. Hodge*, 2014 WL 222739, at *3 (S.D. Ill. Jan. 21, 2014) (holding that "[a]n amended petition supersedes and replaces the original pleading, rendering the original petition void. … Thus, the First Amended Petition must stand on its own, without reference to any other pleading." (internal citation omitted)); *cf. Gillespie v. Robert*, 2013 WL 1339708, at *3 (N.D. Ill. Mar. 31, 2013) (observing that allegations in an original pleading, once amended, may only be considered when those allegations are "specifically incorporated" into the amended pleading). So as presented by the amended habeas petition, Martinez's arguments on this issue are not specific enough.

The Court hastens to add that even if Martinez had properly identified which comments allegedly violated his due process rights, he still would not be entitled to federal habeas relief. After reviewing the alleged improper comments as spelled out in Martinez's original petition, this Court cannot say that the state appellate court unreasonably applied *Darden* in holding that Martinez received a fair trial. Specifically, in his original petition, Martinez identified three "improper comments" that the prosecution made during trial. First, Martinez identified a portion of the

rebuttal closing argument where the prosecutor stated, "[defense counsel is] basically saying ignore the facts, ignore the evidence." Habeas Pet. at 11; *see also* Exh. BB, Trial Report of Proceedings Vol. 9 at PP-157, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.). The appellate court ultimately determined that the comment did not violate Martinez's right to a fair trial. Exh. A, Order on Direct Appeal at 14. In so holding, the court questioned whether this comment was even improper, observing that "the trial court [had] sustained at least three objections to the defense closing argument for misstating the evidence or referring to alleged evidence outside the trial record." *Id.*

Martinez also claimed that another portion of the rebuttal closing argument amounted to improper commentary directed at his defense counsel:

> Well, it's a good thing that there is a court reporter taking down everything that happens here and everything that [defense counsel] said because he can't seem to get straight what happened between one day and the next during the trial and when [he] does it it's a mistake, it's an accident. If a police officer, God forbid should write down the wrong thing on a police report, then it's a grand conspiracy against Joseph Martinez. And it's really lucky we have [defense counsel] on the case here.
>
> [Defense objection overruled.]
>
> Because [defense counsel] figured out what all of these detectives, all these police officers with all of their years of experience could not figure out, that it's possible that a mother could harm their own child. And I would love to stand in front of you and tell you they have never seen that before. They have seen it all.

Habeas Pet. at 12; *see also* Exh. BB, Trial Report of Proceedings Vol. 9 at PP-149-150. When analyzing this comment, the appellate court noted that "[t]he trial court sustained an objection as to what defense counsel knew, generally curing any

improper inference." Exh. A, Order on Direct Appeal at 15. What's more, the appellate court pointed out that "the comments were the introduction to the rebuttal of the defense argument suggesting that the police did not consider Valerie to be a suspect, when the record shows that Valerie was also questioned, arrested and charged." *Id.*

Finally, Martinez also contested comments accompanying two objections made by the State during trial: the State's request for a sidebar to "clarify [an issue regarding a report] for [defense counsel] again," Habeas Pet. at 12; R. 25-25, Exh. Y, Trial Report of Proceedings Vol. 6 at MM-87, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.), and the State's remark that "Just because [defense counsel] doesn't remember doesn't mean he gets to ask it again," Habeas Pet. at 12; Exh. Y, Trial Report of Proceedings Vol. 6 at MM-152. Martinez contends that these remarks "presented to the jury a picture that defense counsel was trying to hide facts from them and trick them into finding petitioner not guilty, prejudicing and denying petitioner a fair trial." Habeas Pet. at 12. As with Martinez's other "improper comment" arguments, the appellate court rejected this one too, reasoning that "the record shows that defense counsel stated that he might have misheard prior testimony, which prompted the State's comment during the objection." Exh. A, Order on Direct Appeal at 15.

The Court concludes that, even if Martinez presented this issue specifically enough, he would not be entitled to relief. The Illinois Appellate Court properly analyzed whether the remarks were improper and the extent to which the remarks

prejudiced Martinez at trial. The appellate court adequately applied *Darden*, determining that in each instance defense counsel had invited the prosecution's alleged "improper comment," and reasoning that where "the State made improper comments about defense counsel, ... the trial court sustained the objections to them, curing any improper inferences." Exh. A, Order on Direct Appeal at 15. To be sure, perhaps some of the comments were presented with more sarcasm and exasperation than ideal, but the appellate court reasonably determined that they were either not improper or were not so egregious as to deprive Martinez of due process.

### D. Claim 3 (Original Petition Claim 4):<br>Right to Due Process—Trial Court Error

Broadly speaking, Martinez's third claim is that the trial judge violated his due process rights.[11] R. 37 at Exh. 1, Am. Habeas Pet. at 13-17. He claims that the trial judge made three errors: first, the trial judge refused to recuse himself after having referred to Martinez as a "beast" during Padin's sentencing hearing. *Id.* at 13-14. Second, the trial judge prematurely gave a deadlock instruction to the jury.[12]

---

[11]This claim is properly before the Court on federal habeas review. Martinez raised it on direct review to the Illinois Appellate Court and in his petition for leave to appeal to the Illinois Supreme Court. Exh. A, Order on Direct Appeal at 22-25; Exh. E, Pet. for Leave to Appeal at 2-3, 20-21. The Court notes, however, that although Martinez identified the transcript issue in his petition for leave to appeal to the Illinois Supreme Court, he did not provide any legal argument as to why the trial court's failure to give the jurors transcripts for the defense's final two witnesses constituted reversible error. *See* Exh. E, Pet. for Leave to Appeal.

[12]Martinez attempts to allege yet another error in conjunction with his deadlock instruction argument, namely, that the trial judge improperly instructed the jury on the definition of "great bodily harm." R. 37 at Exh. 1, Am. Habeas Pet. at 14. The Court need not address this argument, however, because Martinez failed to assert this ground for habeas relief through one complete round of state court review. Martinez asserted this ground for habeas relief in his direct appeal to the Illinois Appellate Court, *see* Exh. B, Appellant's Opening Br. on Direct Appeal at 33-34, 36-40, but did not raise this argument

*Id.* at 13-15. And finally, the trial judge gave the jury transcripts of some, but not all, witnesses' trial testimony. *Id.* at 13, 16-17. To evaluate Martinez's third claim, the Court will address whether the Illinois Appellate Court decision as to each alleged error was contrary to, or involved an unreasonable application of, Supreme Court law.

### 1. Failure to Recuse Due to Personal Bias

Martinez asserts that the trial judge should have recused himself after calling him a "beast" at Padin's sentencing hearing. R. 37 at Exh. 1, Am. Habeas Pet. at 13-14. When sentencing Padin, the trial judge stated, "I do believe Ms. Padin had knowledge that she was the one who brought the beast into the house … I don't think you were there to stand between the beast you brought into your house and your son." Exh. B, Appellant's Opening Br. on Direct Appeal at 34. This excerpt, according to Martinez, proves that the judge had a personal bias that he contends should have disqualified the judge from presiding over his trial. R. 37 at Exh. 1, Am. Habeas Pet. at 13-14.

Remember that under AEDPA, the first issue is whether the Illinois Appellate Court applied the correct legal rule to Martinez's challenge. Broadly speaking, "[t]he Due Process Clause guarantees litigants an impartial judge." *Montgomery v. Uchtman*, 426 F.3d 905, 910 (7th Cir. 2005); *In re Murchison*, 349 U.S. 133, 136 (1955) ("[N]o man is permitted to try cases where he has an interest in the outcome."). Though courts presume "that judges are honest and impartial,"

---

in his petition for leave to appeal to the Illinois Supreme Court, *see* Exh. E, Pet. for Leave to Appeal at 2-3. This argument, therefore, is procedurally defaulted, without any excuse, and the Court need not address it further.

this presumption may be rebutted. *Montgomery*, 426 F.3d at 910. In *Tumey v. Ohio*, 273 U.S. 510 (1927), the Supreme Court held that a judge's "direct, personal, substantial pecuniary interest" in convicting defendants warranted disqualifying the judge from presiding over the defendant's trial. *Id.* at 523, 535. The Court concluded that bias could be presumed from the judge's pecuniary interest in collecting fines. *Id.* at 523; *see also Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986) (presuming bias where a judge's decision had the "immediate effect of enhancing the legal status and the settlement value" of another lawsuit in which the judge had a personal interest); *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 59-60 (1972) (presuming bias where the judge also served as the mayor of a municipality and fines collected by the court provided a substantial portion of municipality funds).

Here, the Illinois Appellate Court applied the correct rule in considering whether "the alleged bias or prejudice … stemmed from an extrajudicial source and result[ed] in an opinion on the merits on a basis other than what the judge learned from the case." Exh. A, Order on Direct Appeal at 22. The appellate court recognized that in order for the duty to recuse to arise, a judge must have a "'personal bias or prejudice for or against a defendant.'" *Id.* (quoting *People v. Neumann*, 499 N.E.2d 487, 492 (Ill. App. Ct. 1986)). Surely, a "direct, personal, substantial, pecuniary interest," *Tumey*, 273 U.S. at 523, would constitute a "bias or prejudice … stemmed from an extrajudicial source, Exh. A, Order on Direct Appeal at 22. Martinez,

therefore, cannot claim that the court's decision was contrary to clearly established Supreme Court law.

Nor can Martinez claim that the state appellate court unreasonably applied *Tumey* in determining that the trial judge was not required to recuse himself. Though the appellate court acknowledged that "[r]eferring to Martinez as a 'beast' w[as] injudicious," the court also noted that the reference "[wa]s not a declaration that [the trial judge] believed Martinez to be guilty of murder, or even involuntary manslaughter." Exh. A, Order on Direct Appeal at 23; *see also Franklin v. McCaughtry*, 398 F.3d 955, 960 (7th Cir. 2005) ("To prove disqualifying bias, a petitioner must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.'" (quoting *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1380 (7th Cir. 1994)). In other words, the appellate court concluded that any alleged bias the trial judge had was simply "too speculative and insubstantial to overcome the presumption of his impartiality." *Montgomery*, 426 F.3d at 911. This Court agrees: Martinez's failure to point to anything other than what the judge learned at trial as a source of the alleged bias precludes his recusal argument. Martinez has not met the second prong of AEDPA and therefore is not entitled to habeas relief on this ground.

### 2. Premature Deadlock Instruction

On the second day of deliberations, after having deliberated for over eight hours, the jury sent the trial judge the following note: "We feel we are at an impasse on the verdict. We are unanimous on guilt, however, divided on which charge. We

ask for your instruction/guidance." Exh. A, Order on Direct Appeal at 7. The judge then issued a *Prim* instruction—that is, a deadlock instruction—to the jury. *Id.* After further deliberation, the jury found Martinez guilty of first-degree murder. *Id.* Martinez now asserts that administering a deadlock instruction only eight hours after the jury began deliberating "pressured the jury to reach a verdict for the sake of complying with a judicial admonishment rather than with the intention to decide the matter based on an adequate application of the law to the facts proven." R. 37 at Exh. 1, Am. Habeas Pet. at 15.

The trial judge's decision to give a deadlock instruction after the jury had deliberated for over eight hours was not constitutional error warranting habeas relief. When reviewing an allegedly improper instruction in a federal habeas proceeding, "the proper inquiry … is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The instruction must be examined "in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A federal court may not grant habeas relief then unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *id.* at 146 ("Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some

right which was guaranteed to the defendant by the Fourteenth Amendment."). Significantly, "[u]nder federal constitutional standards, the timing of a deadlock instruction is within the trial court's discretion." *United States ex rel Cowan v. Thieret*, 1986 WL 11681, at *2 (N.D. Ill. Oct. 9, 1986), *aff'd sub nom.*, 826 F.2d 1068 (7th Cir. 1987).

One final note on Supreme Court law concerning improper jury instructions: "[T]he Supreme Court, as well as [the Seventh Circuit], has been resolute in ruling that errors of state law, especially errors based on a trial court's evidentiary rulings or *jury instructions*, do not, in and of themselves, violate the Constitution." *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996) (emphasis added) (citing *Estelle*, 502 U.S. at 67). So while a petitioner may be entitled to habeas relief where a jury instruction "so infused the trial with unfairness as to deny due process of law," *Lisenba v. California*, 314 U.S. 219, 228 (1941), "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief," *Estelle*, 502 U.S. at 71-72.

The Illinois Appellate Court's analysis is consistent with the legal principles set forth in these cases. The appellate court observed that administering a deadlock instruction is within the trial court's discretion in light of "the length of time already spent in deliberation and the complexity of the issues before the jury." Exh. A, Order on Direct Appeal at 24. After examining the entire trial record—including the amount of time the jury had deliberated, the length of the trial, the number of witnesses the jury heard, and the legal issues the jury had to consider—the

appellate court concluded that the trial court did not abuse its discretion when it administered the deadlock instruction. *Id.* at 25. This review of the entire trial record shows that the appellate court took a holistic approach in assessing whether the deadlock instruction coerced the jury into rendering a verdict that deprived Martinez of his due process rights. To be sure, the appellate court did not cite any federal law concerning constitutional challenges to jury instructions and its cursory analysis leaves much to be desired. But "[a] state court need not even be aware of Supreme Court precedent 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)). That is the case here: particularly given that "the timing of a deadlock instruction is within the trial court's discretion," *Thieret*, 1986 WL 11681, at *2, this Court cannot say that the Illinois Appellate Court unreasonably applied Supreme Court precedent. Therefore, Martinez has failed to show that the trial judge's decision to administer a deadlock instruction violated his due process rights.

### 3. Failure to Give Transcripts of Defense Witnesses' Testimony to Jury

During deliberations, the jury asked for transcripts of the witnesses' trial testimony. R. 25-29, Exh. CC, Trial Report of Proceedings Vol. 10 at QQ-3, *People v. Martinez*, No. 03-CR-26668 (Cir. Ct. Cook Cnty.). At first, the jury specifically requested transcripts for two witnesses: Dr. Nancy Jones (a medical examiner) and Padin. *Id.* at QQ-4-5. The jury then requested the rest of the transcripts after the trial judge had provided Dr. Jones's and Padin's uncertified transcripts. *Id.* at QQ-6.

Over the defense's objection, the trial judge provided the rest of the witnesses' transcripts, save for two of the defense's witnesses—the defense's expert, Dr. Spitz, and a paramedic, Robert Sisson. *Id.* at QQ-9-10, QQ-23. Martinez now contends that the trial judge's failure to give the jury transcripts of two key defense witnesses, while providing transcripts of all other witnesses, "deprived [the jury] of equal[ly] … assess[ing] the validity and credibility of all the witnesses during their deliberations."[13] R. 37 at Exh. 1, Am. Habeas Pet. at 16-17.

Under federal law, the question "whether to comply with [a] jury's request for the transcript of a witness' testimony is one 'purely within the trial court's discretion.'" *United States v. Howard*, 80 F.3d 1194, 1202 (7th Cir. 1996) (quoting *United States v. Guy*, 924 F.2d 702, 708 (7th Cir. 1991)), *amended* (May 2, 1996). Given this, it is exceedingly difficult to establish that a trial court's decision to provide the jury with witnesses' testimony constitutes a due process violation. *Guy*, 924 F.2d at 708; *see e.g.*, *United States ex rel. Brooks v. DeTella*, 1997 WL 47451, at *2 (N.D. Ill. Jan. 30, 1997) (holding that trial judge's refusal to provide a trial transcript to the jury was not fundamentally unfair given the trial court's inability to reach the court reporter).

With this in mind, the Court also hastens to point out that in order for Martinez to obtain relief for this alleged error—as with Martinez's other alleged

---

[13]The Court notes that while Martinez identified this issue in his petition for leave to appeal to the Illinois Supreme Court, he did not address the issue substantively or make any legal argument whatsoever as to why the trial court's decision to give the jurors transcripts of some, but not all, witnesses constituted reversible error. *See* Exh. E, Pet. for Leave to Appeal at 2-3, 10-11. For completeness purposes, the Court will nevertheless address the issue on the merits.

errors—he must identify established Supreme Court precedent and show that the Illinois Appellate Court's decision was contrary to or an unreasonable application of that precedent. Martinez has failed on both accounts. (Perhaps this is because there is apparently no Supreme Court decision directly analyzing how a trial court should handle a jury's request for transcripts.) Without any precedent to go on, this Court cannot conclude that the Illinois Appellate Court unreasonably applied clearly established federal constitutional law. *See United States ex rel. Blakemore v. Grounds*, 2010 WL 3257939, at *7 (N.D. Ill. Aug. 16, 2010) (providing a jury with a partial transcript in response to a request for a complete one did not violate the petitioner's right to a fair trial given that "[Supreme Court] case law furnishe[d] no answer to the question at issue").

### E. Claim 4 (Original Petition Claim 5): Cruel and Unusual Punishment—75-Year Sentence is Excessive

In his fourth claim, Martinez asserts that his extended-term sentence violated his right against cruel and unusual punishment. R. 37 at Exh. 1, Am. Habeas Pet. at 17-18. According to Martinez, the trial judge improperly relied on his own personal bias and prejudice, and failed to consider any mitigating factors, when he sentenced Martinez to 75 years in prison. *Id.*

This claim is procedurally defaulted. As discussed earlier, a habeas petitioner must fully and fairly present his federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan*, 526 U.S. at 845. If a petitioner has failed to properly assert his federal claims at each level of state review, then his claims are procedurally defaulted. *See McDowell*,

737 F.3d at 482. As the State correctly points out, although Martinez asserted this claim on direct appeal to the Illinois Appellate Court, Exh. B, Appellant's Opening Br. on Direct Appeal at 47-50, he did *not* raise it in his petition for leave to appeal to the Illinois Supreme Court, *see* Exh. E, Pet. for Leave to Appeal at 2-3. Nor did Martinez assert this claim in any state court collateral proceeding. *See* Exh. II, Postconviction Common Law Record at C10-16; Exh. NN, Successive Postconviction Common Law Record Vol. 1 at C26-39; Exh. M, Pet'r's Opening Br. at 19-30; Exh. Q, Postconviction Pet. for Leave to Appeal at 5-19. Based on this record, this Court cannot reach the merits of Martinez's excessive-term claim given that Illinois state courts did not have a full and fair opportunity to review it. Nor has Martinez argued that there was cause and prejudice, or a miscarriage of justice, that would justify disregarding the default. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). Claim 4, therefore, is rejected.

## F. Claim 5 (Original Petition Claim 6): Right Against Self-Incrimination—Custodial Statements Were Coerced

Martinez's final claim is that the trial judge improperly admitted his allegedly coerced custodial statements as evidence at trial in violation of his right against self-incrimination and due process of law. R. 37 at Exh. 1, Am. Habeas Pet. at 18-21. Martinez alleges that his custodial statements were coerced because the police obtained the statements while detaining him for over 48 hours without a probable cause determination. *Id.* In support of this claim, Martinez points to a class-action settlement notice he received in October 2010. *Id.*; Exh. NN, Successive Postconviction Common Law Record Vol. 1 at C42-44.

This claim too suffers from a procedural default. Here, the state appellate court rejected Martinez's coerced custodial statement claim on an independent and adequate state law ground. Martinez first raised this claim in a motion for leave to file a successive postconviction petition filed in the Circuit Court of Cook County. Exh. NN, Successive Postconviction Common Law Record Vol. 1 at C26-39. The Circuit Court observed that in order to file a successive postconviction petition, a petitioner must "'demonstrate[] cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice result[ing] from that failure.'" *Id.* at C157 (quoting 725 ILCS 5/122-1(f)). On appeal, the Illinois Appellate Court affirmed the lower court's judgment, holding that Martinez failed to satisfy the requisite cause and prejudice test under Section 5/122-1(f) for filing a successive postconviction petition. Exh. P, Order, 2014 WL 1281696, at *6-7. Where, as here, "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," procedural default kicks in to bar federal habeas relief. *Coleman*, 501 U.S. at 729. And Martinez failed to argue that the cause-and-prejudice or miscarriage-of-justice exceptions apply to his fifth claim. So, as with Claims 1-4, Claim 5 is also rejected.

## IV. Conclusion

For the reasons discussed above, Martinez's amended habeas petition [R. 37 at Exh. 1] is denied. If Martinez seeks to appeal the denial of his habeas petition, he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus

proceeding in which the detention complained of arises out of process issued by a State court" unless the circuit justice or judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted). For the reasons discussed above, Martinez has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should been resolved differently or determine that Martinez deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The state courts' decisions on all of Martinez's claims were well within the deference owed to state courts under AEDPA. The Court therefore declines to issue a certificate of appealability.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 29, 2016